*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re PERRY/ROBINSON, Minors.

UNPUBLISHED
November 17, 2022

No. 358904
Oakland Circuit Court
Family Division
LC No. 2020-881987-NA

Before: GARRETT, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children, NR and JP, under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury to child), (b)(*ii*) (failure to prevent physical injury to child), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm if returned to parent), and (k)(*iii*) (parent abused child and abuse involved battering, torture, or severe physical abuse). Respondent argues that the trial court erred by terminating her parental rights at the initial dispositional hearing without finding that there were aggravating circumstances to excuse petitioner, the Department of Health and Human Services (DHHS), from making reasonable efforts at reunification. Respondent also argues that the trial court erred by applying the doctrine of anticipatory neglect to justify termination of her parental rights to JP, and by finding that termination of her parental rights was in the children's best interests. For the reasons set forth in this opinion, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Following an investigation by Children's Protective Services (CPS), the DHHS filed a petition requesting jurisdiction over NR and JP and seeking termination of respondent's parental rights at the initial disposition. The petition alleged that in November 2019, 8-month-old NR was admitted to the hospital for bruising and burn marks. Dr. Rita Haddad observed that NR had burns and blisters on her face and feet, along with an arm fracture that was already in the stages of healing. According to the petition, respondent reported that she was unaware of NR's injuries until she received a phone call from her mother who noticed them. But the petition alleged that "the injuries would have occurred while the child was in the custody" of respondent because the age of the injuries did not align with the time frame provided by respondent. The petition further alleged that JP was interviewed at Care House, an advocacy center for victims of child abuse, and

-1-

she reported that "someone smeared a hot knife on [NR's] stomach and poked her foot." JP reported that she heard respondent say to JP's grandmother that something happened to NR and to see if NR had any broken bones. JP also stated that NR had fallen off the bed while respondent and her boyfriend were watching. The DHHS sought termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*iii*).[1] Respondent pleaded no-contest to statutory grounds for termination in June 2021. The trial court relied on the petition as a factual basis, accepted respondent's pleas, and found statutory grounds for terminating respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*iii*).

The court later held a hearing to decide whether termination was in the children's best interests. Dr. Earl Hartwig testified that he treated NR in November 2019 after respondent brought NR to the emergency room. Dr. Hartwig observed lesions at each corner of NR's mouth that were most likely caused by burns, bruising or burns on the tips of both ears, burns or abrasions around the navel, and a blister surrounded by an old scar on her right foot. Dr. Hartwig testified that an infant would be unable to sustain these injuries herself and therefore diagnosed the injuries as nonaccidental trauma. NR also had weeks-old fractures in her right forearm. Dr. Hartwig testified that respondent told him that she left NR with her paternal grandmother and aunt two days before the hospital visit. She claimed that there were no lesions on NR's body when she dropped NR off. Based on the estimated ages of the injuries, Dr. Hartwig opined that NR's arm and foot injuries were inconsistent with respondent's timeline.

Sylvie Bourget, a clinical psychologist, testified that she conducted a court-ordered psychological evaluation of respondent one week before the best-interests hearing. Respondent gave conflicting statements about her observations of NR's injuries and "tended to project blame on the paternal relatives" that NR had been visiting. Respondent told Bourget that her mother was watching NR and called respondent to tell her to take NR to the hospital. Bourget contended that respondent's decision to leave the children with different relatives "may have disrupted the bonding process between herself and her children." In particular, respondent had left NR with NR's father for two weeks shortly after NR's birth without having contact with the child.

Bourget also testified that she asked respondent about JP's statement that NR fell to the ground several times, and respondent largely dismissed JP's claims. Respondent stated that JP was "an impressionable little girl" who could not be trusted because she heard things from the adults she knew. Bourget also had concerns with respondent's supervision of the children because JP had told an investigator that she sometimes prepared bottles for NR and changed NR's diaper. Bourget stated that respondent's deficiencies in parenting her children involved improper supervision, failure to protect, and unstable housing. Bourget believed termination was in the children's interests because the improper supervision, unstable housing, and disrupted bond affected both children.

---

[1] A separate petition involving NR's father, who relocated to California, was pending at the time of the trial court's order terminating respondent's parental rights. NR's father is not a party to this appeal, and JP's father is deceased.

Tiffany Denton, a CPS investigator, testified that she received this case in December 2019 after NR received medical treatment. Denton spoke with respondent, who told her that NR stayed with her great-grandmother four days a week because respondent had to work, and JP stayed either with her and her boyfriend in Oakland County or with respondent's mother. Denton testified that another CPS worker visited the home where respondent and the children lived with respondent's boyfriend and his mother. The home had minimal children's items. NR slept in a swing that respondent brought between homes; Denton advised her that this was unsafe and provided her with a Pack-and-Play. As for NR's injuries, Denton testified that respondent gave conflicting statements about when she noticed the injuries and who was to blame. Respondent was never charged with a crime following multiple police investigations into child abuse at the different homes where NR stayed. Denton assessed respondent's parenting ability as "minimal." NR was never consistently in respondent's care because she was passed around among relatives. Denton stated that the children never had stable bonding and stated that their bond with respondent was minimal even before removal from her care. According to Denton, the children's living environment at the different relative homes was "chaotic."

Sara Peoples, a foster care worker with the DHHS, testified that NR was placed with her paternal great-aunt. NR was developing well and her great-aunt was interested in adoption. Similarly, Peoples testified that JP was placed with her paternal grandmother, who was interested in adopting JP if respondent's parental rights were terminated. JP was happy and comfortable in her placement, felt safe and loved, and seemed well-adjusted to her situation. Similarly, the children's paternal great-aunt, who was caring for NR, and the paternal grandmother, who was caring for JP, respectively testified that the children were doing well in their placements. Both relatives stated that they were willing to adopt the child in their care if respondent's parental rights were terminated.

Following the hearing, the trial court issued a written opinion and order finding that termination of respondent's parental rights was in the best interests of NR and JP. This appeal followed.

## II. REASONABLE EFFORTS

Respondent first argues that the trial court erred by terminating her parental rights at the initial disposition, without requiring petitioner to make reasonable efforts at reunification, because DHHS failed to allege aggravated circumstances in the petition and the trial court failed to make a judicial finding on the existence of aggravated circumstances.

### A. PRESERVATION AND STANDARD OF REVIEW

Because respondent did not raise this issue in the trial court, it is unpreserved. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). We review unpreserved claims for plain error affecting substantial rights. *Id.* "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights," meaning the plain error prejudiced respondent. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021) (quotation marks and citation omitted). To the extent that this issue involves the interpretation and application of statutes, such issues present questions of law, which are reviewed de novo. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747

(2010). "De novo review means that we review the legal issue independently," without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

B. ANALYSIS

Reasonable efforts to reunify a parent and child are not required if "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in [MCL 722.638](1) and (2)." MCL 712A.19a(2)(a); *In re Simonetta*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357909); slip op at 1. Aggravated circumstances exist when a parent has abused the child and the abuse involves "[b]attering, torture, or other severe physical abuse." MCL 722.638(1)(a)(*iii*). If the parent "is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the [DHHS] shall include a request for termination of parental rights at the initial dispositional hearing as authorized" under MCL 712A.19b. MCL 722.638(2).

In this case, the DHHS sought termination of respondent's parental rights at the initial dispositional hearing. Respondent eventually entered a no-contest plea to the existence of statutory grounds for termination. "A respondent may make a plea of admission or of no contest to the original allegations in the petition." MCR 3.971(A). The court must advise the respondent "of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent." MCR 3.971(B)(4). To establish the factual basis for a no-contest plea to statutory grounds for termination, "the court shall not question the respondent, but, by some other means, shall obtain support for a finding that one or more of the statutory grounds alleged in the petition are true." MCR 3.971(D)(2).

MCR 3.977(E), which governs termination of parental rights at the initial disposition, provides:

**(E) Termination of Parental Rights at the Initial Disposition.** The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if

(1) the original, or amended, petition contains a request for termination;

(2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;

(3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:

(a) are true, and

-4-

(b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (l), or (m);

(4) termination of parental rights is in the child's best interests.

Respondent argues that it was improper to terminate her parental rights at the initial disposition, without requiring the DHHS to offer reunification services, because the DHHS failed to allege aggravated circumstances in the petition and the trial court made no finding about aggravated circumstances. The DHHS responds that respondent's no-contest plea to statutory grounds for termination was sufficient to establish the requisite aggravated circumstances.

Although the DHHS did not use the phrase "aggravated circumstances" in the petition, it sought termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*iii*). MCL 712A.19b(3)(k)(*iii*) authorizes termination of parental rights when a parent has abused a child and the abuse involved "battering, torture, or other severe physical abuse." Child abuse involving "battering, torture, or other severe physical abuse" is also one of the enumerated aggravated circumstances permitting termination of parental rights at the initial disposition, excusing reasonable efforts toward reunification. MCL 722.638(1)(a)(*iii*); MCL 712A.19a(2)(a). The petition also included factual allegations that identified the acts constituting "battering, torture, or other severe physical abuse." Respondent pleaded no contest to these allegations and stipulated to their use to establish the factual basis for her plea. The trial court accepted respondent's no-contest plea to statutory grounds for termination, finding that the petition allegations provided an adequate factual basis. The trial court also found that several statutory grounds for termination had been proven, including MCL 712A.19b(3)(k)(*iii*). Although the trial court did not expressly state that it found aggravated circumstances excusing the need for reasonable efforts, the court's finding of statutory grounds under subparagraph (k)(*iii*) "amount to a judicial determination" that respondent subjected NR to aggravated circumstances under MCL 722.638(1)(a)(*iii*). See *In re Rippy*, 330 Mich App 350, 358; 948 NW2d 131 (2019). The DHHS was therefore not statutorily required to make reasonable efforts at reunification, and respondent cannot establish plain error.

Respondent cites *In re Simonetta*, 507 Mich 943, 943; 959 NW2d 170 (2021), to argue that failing to make an appropriate finding of aggravated circumstances is a reversible error. Broadly speaking, we agree. In *Simonetta*, 507 Mich at 943, our Supreme Court vacated the portion of this Court's opinion "holding that the trial court made the requisite judicial determination that the respondent subjected [the minor child] to the circumstances provided for in MCL 722.638(1) and (2), and satisfied the requirements of MCR 3.977(E) necessary to terminate the respondent's parental rights without requiring reasonable efforts at reunification." The Supreme Court ordered on remand that the trial court "either order that the petitioner provide reasonable services to the respondent, or *articulate a factual finding based on clear and convincing evidence that aggravated circumstances exist such that services are not required*." *Id*. (emphasis added).

The Supreme Court's order in *Simonetta*[2] could be read as requiring trial courts to specifically state on the record that they found aggravated circumstances exist. But on closer examination, we are not persuaded that the Supreme Court's order mandated such a bright-line rule. See *In re Casper/Washington*, unpublished per curiam opinion of the Court of Appeals, issued June 9, 2022 (Docket No. 359270), p 6.[3] Rather, *Simonetta* involved a trial court's findings that statutory grounds for termination existed under MCL 712A.19b(3)(g) and (j).[4] These statutory grounds are respectively established when the parent "fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age," MCL 712A.19b(3)(g), and "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent," MCL 712A.19b(3)(j). Finding that these statutory grounds have been met does not necessarily entail a "judicial determination" of aggravated circumstances. MCL 722.638(1) and (2) list specific aggravated circumstances, including abandonment and severe physical abuse, that are not established merely by proving a "fail[ure] to provide proper care or custody" or a reasonable likelihood of harm; it depends on the nature of that failure or harm, and whether it amounts to one of the enumerated types of abuse listed in MCL 722.638(1) and (2).

Compare that with MCL 712A.19b(3)(k)(*iii*), which is met when the parent abused the child, the abuse included "[b]attering, torture, or other severe physical abuse," and there is a reasonable likelihood that the child will be harmed if returned to the abusive parent. MCL 722.638(1)(a)(*iii*) specifically provides that one aggravating circumstance is abuse by a parent that includes "[b]attering, torture, or other severe physical abuse"—identical language to MCL 712A.19b(3)(k)(*iii*). Here, the trial court found that several statutory grounds for terminating respondent's parental rights had been proven by clear and convincing evidence, including subparagraph (k)(*iii*). And respondent pleaded no contest to the allegations supporting those findings.[5] Thus, unlike in *Simonetta*, the trial court here *necessarily* made a "judicial determination" of aggravating circumstances under MCL 722.638(1)(a)(*iii*) by finding clear and convincing evidence that respondent committed abuse involving "[b]attering, torture, or other

---

[2] An order from our Supreme Court is "binding precedent if it constitutes a final disposition of an application and contains a concise statement of the applicable facts and reasons for the decision." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

[3] Unpublished opinions are not binding precedent, but we may consider them for their instructive or persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

[4] *In re Simonetta*, unpublished per curiam opinion of the Court of Appeals, issued February 18, 2021 (Docket No. 354081), pp 1-2, vacated in part by *Simonetta*, 507 Mich at 943.

[5] Although the DHHS filed an amended petition in October 2020 removing its request for termination under subparagraph (k)(*iii*), respondent's plea form incorporates the initial petition from February 2020. While it is unclear from the transcript of the plea hearing if the trial court similarly relied on the initial petition to establish a factual basis, the factual allegations in both petitions are the same. And regardless, it is undisputed that the trial court found clear and convincing evidence that the (k)(*iii*) statutory ground for termination had been proven.

severe physical abuse." Accordingly, respondent has not established that the trial court plainly erred by terminating her parental rights without ordering the DHHS to provide reunification services.[6]

## III. BEST INTERESTS

Respondent next argues that the trial court erred by finding that termination of her parental rights was in the children's best interests. As for JP, respondent contends that the trial court's best-interests determination was tainted by an erroneous application of the anticipatory neglect doctrine.

## A. PRESERVATION AND STANDARD OF REVIEW

The trial court addressed and decided whether termination of respondent's parental rights was in each child's best interests, and it expressly applied the doctrine of anticipatory neglect in its analysis of that issue. Respondent was not required to object to the trial court's findings or decision. MCR 2.517(A)(7). Therefore, this issue is preserved for our review.

We review the trial court's best-interest findings for clear error. *Sanborn*, 337 Mich App at 276. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

## B. ANALYSIS

"Even if the trial court finds that the [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). The focus of the best-interest determination is on the children, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). The trial court may consider a range of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Other relevant factors are "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). "The trial court has a duty to decide the best interests of each child individually," *Olive/Metts*, 297 Mich App at 42, which the court here did in its written

---

[6] Because respondent failed to establish plain error, we decline to consider whether respondent's plea and assent to proceeding with the best-interest hearing waived the necessity for specific allegations and findings about aggravated circumstances.

opinion. Therefore, we review the trial court's best-interests findings involving NR and JP separately.

## 1. NR

The evidence established that NR had a series of injuries of different ages. The trial court found that respondent either inflicted the injuries or knew who did. As the trial court explained:

> Given the disturbing nature of the intentional injuries inflicted on NR, mother's conflicting stories presented by multiple witnesses regarding her lack of culpability, and the otherwise chaotic situation representing the first 11 months of NR's life, the court can only reasonably conclude that mother is inflicting harm on the child or being willfully blind to the physical and emotional harm inflicted on her.

This finding was not clearly erroneous. The trial court observed the testimony of several witnesses and drew credibility determinations about the truthfulness of this testimony, to which we defer, throughout its opinion. This testimony included Dr. Hartwig's opinions substantiating the severe injuries suffered by NR. The evidence established that respondent gave conflicting explanations for NR's injuries and when she noticed them, and did not seek medical treatment for the injuries until her mother instructed her to take NR to the hospital. Although Dr. Hartwig was unable to precisely determine the ages of the injuries, he found that some injuries were inconsistent with respondent's timeframe and concluded that the injuries were nonaccidental.

The trial court further found that the stability of NR's foster care environment, NR's wellbeing in foster care, and the willingness of NR's paternal great-aunt to adopt her all favored termination. The court recognized that while a placement with relatives generally weighs against termination, see *Olive/Metts*, 297 Mich App at 43, this consideration was outweighed by the trauma suffered by NR while in respondent's care. The court also found that NR's bond with respondent was minimal at best. Witnesses testified that respondent left NR with her father for two weeks immediately following her birth with little explanation, possibly harming the mother-child bonding process. And NR's paternal great-aunt, with whom she was placed in February 2020, testified that NR had an "extremely" strong bond with her and called her "Mommy." In sum, the trial court did not clearly err by finding that termination of respondent's parental rights was in NR's best interests.

## 2. JP

Respondent also argues that the trial court clearly erred by finding that termination of her parental rights was in JP's best interests. She specifically contends that the trial court improperly relied on the anticipatory neglect doctrine to infer that she would likely fail to protect JP.

The doctrine of anticipatory neglect "provides that the parents' treatment of other children is indicative of how they would treat the child in question." *In re Foster*, 285 Mich App 630, 631; 776 NW2d 415 (2009). "However, the probative value of such an inference is decreased by differences between the children, such as age and medical conditions." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). In *Kellogg*, 331 Mich App at 260-261, this Court held that

the anticipatory neglect doctrine was insufficient to establish statutory grounds for jurisdiction over one child because there were "substantial differences between the two children" involved in the child protective proceedings. These differences included that one child was nine years younger than the other child, lacked a history of trauma and behavioral issues that the older child had, and had a stronger bond with the respondent. *Id.* Similarly, in *In re LaFrance Minors*, 306 Mich App 713, 730-732; 858 NW2d 143 (2014), this Court reversed the trial court's decision to terminate the respondents' parental rights to their three older children under the doctrine of anticipatory neglect because the doctrine had "little bearing" on the case. The trial court justifiably terminated the respondents' parental rights to their youngest child, an infant who had special needs and medical vulnerabilities that the respondents failed to appreciate. *Id.* at 728-732. The older children, however, did not share these medical needs, and importantly, "respondents had cared for those children from birth without incident, including any allegation, let alone proof, that they had abused or neglected" them. *Id.* at 730.

Here, there was similarly no proof that respondent ever physically abused JP, and JP's medical records did not show any health concerns. JP was roughly six years older than NR, who was an infant, and thus JP did not share NR's "inability to articulate personal needs or discomforts." See *LaFrance*, 306 Mich App at 731. Given the absence of proof or allegations of any physical abuse against JP throughout the six years she was in respondent's care, and the difference in the children's ages and abilities, the anticipatory neglect doctrine has little inferential weight here. Thus, had the trial court solely relied on the doctrine of anticipatory neglect to find that termination of respondent's parental rights was in JP's best interests, we would likely agree with respondent's claim of error.

But the trial court found that several other relevant factors favored termination—JP's weakened bond with respondent, JP's need for permanency and stability, respondent's lack of involvement in JP's life, the advantages of foster care over respondent's home, JP's well-being in foster care, the possibility of adoption, and JP's placement with her paternal grandmother. The trial court noted that respondent's unstable housing situation affected NR and JP equally. Denton, the CPS investigator, testified that the children never had stable housing and were passed back and forth between relatives for days at a time. While there is nothing wrong with relying on relatives for childcare assistance, the evidence supported that the children's living situation was fairly unstable and chaotic. It was unclear at times where the children lived, as they moved between their paternal grandmother, maternal grandmother, great-grandmother, and respondent's home. The evidence also showed that JP was doing well in her placement and that the grandmother was willing to adopt JP. Thus, the trial court's finding that JP's need for permanency and stability favored termination, and that JP's grandmother provided a stable home, were supported by the evidence.

Further, at the time of the best-interests hearing, JP had been out of respondent's care for over 18 months, and there was little evidence showing that JP had a strong bond with respondent. Denton testified that from her observations, the children were not significantly bonded with respondent even before their removal. Some evidence also supported that respondent failed to supervise JP. JP told a Care House investigator that she prepared bottles for NR and changed her diaper, an inappropriate task for a child of JP's age. Considering the totality of the record evidence and the trial court's findings, we are not left with a definite and firm conviction that the trial court erred by finding by a preponderance of the evidence that termination of respondent's parental

rights was in JP's best interests. While the probative value of an anticipatory-neglect inference was weak, the trial court's other best-interest findings were supported on the record. Accordingly, the trial court did not clearly err by terminating respondent's parental rights to JP.

## IV. CONCLUSION

The trial court did not plainly err by terminating respondent's parental rights at the initial disposition without requiring the DHHS to make reasonable efforts at reunification. The trial court did not clearly err by finding that termination was in the children's best interests. Therefore, we affirm.

/s/ Kristina Robinson Garrett
/s/ Colleen A. O'Brien
/s/ James Robert Redford